quantity must be charged in the indictment because drug quantity is now an element of the offense charged. *See United States v. Strayhorn*, 250 F.3d 462, 467-68 (6th Cir. 2001); *United States v. Ramirez*, 242 F.3d 348, 351-52 (6th Cir. 2001); *United States v. Flowal*, 234 F.3d 932, 938 (6th Cir. 2000). However, the indictment charged Sandlin with manufacturing or attempting to manufacture "in excess of 50 grams of methamphetamine." Thus, Sandlin's indictment was not constitutionally defective, even under the post-*Apprendi* standard, and there was no plain error by the district court.

Under these facts, Sandlin fails to raise a valid *Apprendi* claim, and thus we cannot find that the district court committed plain error by sentencing Sandlin to the mandatory minimum sentence. Accordingly, the district court's sentencing was proper and should not be disturbed.

### IV. CONCLUSION

For the above reasons, we **AFFIRM** the district court's judgment.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0105P (6th Cir.)
File Name: 02a0105p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

        v.                                No. 00-5827

THOMAS C. SANDLIN,
  *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 99-10075—James D. Todd, Chief District Judge.

Argued: October 9, 2001

Decided and Filed: April 2, 2002

Before: JONES[*] and MOORE, Circuit Judges; HAYNES,[**]
District Judge.

_____

### COUNSEL

**ARGUED:** Bruce I. Griffey, OFFICE OF BRUCE IRWIN GRIFFEY, Memphis, Tennessee, for Appellant. Tammi R.

_____

[*] This opinion was submitted to the court prior to Judge Nathaniel R. Jones' departure from the court effective March 31, 2002.

[**] The Honorable William J. Haynes, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

Simpson, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee. **ON BRIEF:** Bruce I. Griffey, OFFICE OF BRUCE IRWIN GRIFFEY, Memphis, Tennessee, Stephen B. Shankman, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant. Tammi R. Simpson, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee.

---

## OPINION

---

NATHANIEL R. JONES, Circuit Judge. Defendant Thomas C. Sandlin ("Sandlin") was charged in a four count indictment in the United States District Court for the Western District of Tennessee, with manufacturing and attempting to manufacture in excess of 50 grams of methamphetamine in violation of 21 U.S.C. §841(a)(1), possession with intent to distribute in violation of 21 U.S.C. §841(a)(1), and manufacturing and attempting to manufacture a controlled substance creating a substantial risk of harm to human life in violation of 21 U.S.C. §856. Sandlin pleaded guilty and was convicted on Count I, manufacturing and attempting to manufacture in excess of fifty grams of methamphetamine. The remaining counts were dismissed pursuant to the government's motion. Sandlin now appeals his sentence. For the reasons stated below, we **AFFIRM** defendant's sentence.

### I.  FACTS

On May 27, 1999, Sandlin confessed to officers at the Selmer (Tennessee) Police Department that he had been in McNairy County since about March of 1999 and that he had manufactured methamphetamine in Tennessee from about March 1, 1999 until about March 27, 1999. He also said that he had manufactured in excess of 50 grams of methamphetamine and that he would give it away to various people. He also told officers in detail how he produced methamphetamine more than once on March 27, 1999.

procedure for contesting drug quantity as a sentencing factor. Following this pre-*Apprendi* procedure, the district judge found, by a preponderance of the evidence, that Sandlin manufactured at least 50 grams of methamphetamine and thus sentenced him pursuant to the enhanced penalty.

On appeal, Sandlin argues that his sentence should be vacated under *Apprendi* because the district court determined, by a preponderance of the evidence, the quantity of drugs he was responsible for manufacturing. However, even if, in imposing the mandatory minimum, the district judge evaluated and relied on the evidence presented by the government at the sentencing hearing, this evaluation and reliance was unnecessary. Based upon *Apprendi*, the district judge did not need to address drug quantity at the sentencing hearing because Sandlin had pleaded guilty to the charge in the indictment and stipulated to the drug quantity subjecting him to the enhanced penalty. *See United States v. Roper*, 266 F.3d 526, 532 (6th Cir. 2001) (holding that no *Apprendi* problem is present where defendant "expressly acknowledge[s]" the drug quantity for which the government seeks to hold him accountable); *United States v. Stafford*, 258 F.3d 465, 476 (6th Cir. 2001) ("Defendant's factual admissions . . . obviate any possible concerns about the proper standard of proof."); *id.* at 477 ("For all intents and purposes, [an admission of the amount of drugs involved] effectively resolves any doubts about drug quantity.").

In addition, *Apprendi* was not offended in the instant case because Sandlin's sentence was not beyond the statutory maximum of twenty years as mandated by 21 U.S.C. §841(b)(1)(A). Sandlin was not prejudiced by the imposition of the ten-year mandatory minimum sentence because he was on notice of the penalty provision of 21 U.S.C. §841(b)(1)(A).

Furthermore, Sandlin's argument that *Apprendi* requires allegations of threshold quantities of drugs in an indictment as essential elements of the offense charged is of limited avail to his *Apprendi* claim. Our recent holdings verify that drug

The case is analogous to the court's recent decision in *United States v. Harper*, 246 F.3d 520 (6th Cir. 2001). Like Sandlin, the defendant in *Harper* pleaded guilty to a drug charge and stipulated to a drug quantity subjecting him to a mandatory minimum sentence of ten years. The defendant in *Harper*, like Sandlin, later attempted to challenge the effects of his guilty plea on appeal. This court affirmed Harper's conviction and sentence, and in the process outlined the circumstances under which *Apprendi* would be implicated by a guilty plea:

> Harper's *Apprendi* argument clearly would have merit if the indictment failed to charge him with conspiracy to distribute a specific quantity of drugs; if he subsequently pleaded guilty without stipulating, either in a plea or in a factual basis, to the amount of drugs for which he assumed responsibility; and if the district court had determined at sentencing, by a preponderance of the evidence, the amount of drugs attributable to Harper which subjected him to an enhanced statutory sentence. Likewise, Harper's claim would have merit if he had been indicted for a "measurable quantity" of marijuana, convicted by a jury for conspiracy to distribute this unspecified quantity, and then sentenced by the district court under a preponderance of the evidence standard in excess of the default statutory maximum.

*Id.* at 530. Neither of these situations applies in the instant case. Sandlin was charged in the indictment with manufacturing more than 50 grams of methamphetamine and pleaded guilty to that charge, acknowledging that he had manufactured more than 50 grams of methamphetamine. The district judge advised Sandlin that his plea would be subject to the mandatory minimum sentence of ten years, and Sandlin stated that he understood this.

Sandlin now argues that he reserved the right to object to the amount of methamphetamine for which he would be held responsible for actually manufacturing during sentencing, and, moreover, that this was the proper pre-*Apprendi*

On September 22, 1999, a federal grand jury returned a four count indictment against Sandlin. The indictment charged Sandlin with manufacturing and attempting to manufacture in excess of 50 grams of methamphetamine in violation of 21 U.S.C. §841(a)(1), possession with intent to distribute in excess of 50 grams of methamphetamine in violation of 21 U.S.C. §841(a)(1), and manufacturing and attempting to manufacture a controlled substance creating a substantial risk of harm to human life in violation of 21 U.S.C. §856.

On May 9, 2000, Sandlin entered a guilty plea to Count I, manufacturing and attempting to manufacture in excess of 50 grams of methamphetamine in violation of 21 U.S.C. §841(a)(1). The probation officer subsequently prepared a Pre-Sentence Report ("PSR"). The PSR stated that Sandlin admitted to police that he had manufactured in excess of 50 grams of methamphetamine. This amount resulted in a base offense level of twenty-six, and with a three level reduction for acceptance of responsibility, the total offense level was calculated at twenty-three. Sandlin had a criminal history category of II, and a sentencing range under the United States Sentencing Guidelines ("Guidelines") of 51-63 months. However, the mandatory minimum sentence of 21 U.S.C. §841(b)(1)(A)(viii) was ten years.

On May 15, 2000, Sandlin filed a position paper in which he objected to the ten-year mandatory minimum sentence. He argued that the ten-year sentence applies only if the offense involved the manufacture of fifty grams or more of "pure" methamphetamine or more than 500 grams of a substance containing methamphetamine. Sandlin reasoned that, because he had not produced pure methamphetamine, he should have been sentenced for having produced less than 500 grams of a substance containing methamphetamine rather than for producing more than fifty grams of pure methamphetamine.

The district court conducted a sentencing hearing on May 25, 2000. At the hearing, Sandlin reiterated the objections in his position paper. The court looked at the PSR and the Guidelines range of 51-63 months. The relevant

conduct, in other words, the amount of methamphetamine attributed to Sandlin, would determine whether the sentence would be 51-63 months or the mandatory minimum sentence of 120 months.

The government presented testimony of a drug task force agent who interviewed Sandlin on the day of his confession. The agent testified that Sandlin was coherent and appeared to understand the agent's questions, and, thus, Sandlin's confession was voluntary. Sandlin informed the agent that he made methamphetamine in McNairy County on three separate occasions, and Sandlin provided the officer with a step-by-step procedure of the manner in which he manufactured methamphetamine.

The government also presented testimony of a forensic chemist who examined Sandlin's statement to the agent and the videotape of Sandlin's methamphetamine recipe. Based upon the testimony of the chemist, the district court found that the amount of methamphetamine "easily reache[d] the amount which would give us a ten-year statutory minimum," and the court then sentenced Sandlin to the mandatory minimum of ten years.

On appeal, Sandlin raises two different arguments: (1) that the district court erred in sentencing him under the mandatory minimum because that minimum applies only where the quantity in question was manufactured in a single act of manufacturing; and (2) that the fact that the district judge calculated the drug quantity runs afoul of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Neither of these challenges was raised below, and thus our review is for plain error. *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998).

## II.   STANDARD OF REVIEW

Sandlin raises two challenges to the sentence imposed by the district court, neither of which was advanced as objections below. "Where . . . a criminal defendant has failed to object below, he or she must demonstrate that the error was plain as

*Zuleta-Molina*, 840 F.2d 157 (1st Cir. 1988). However, in both *Anderson* and *Zuleta-Molina*, the government's authority to charge a defendant separately for each batch of methamphetamine was solely *discretionary*, not *mandatory*.

The district court did not commit plain error by sentencing Sandlin to the mandatory minimum for manufacturing in excess of fifty grams of methamphetamine because Sandlin pleaded guilty to manufacturing in excess of fifty grams of methamphetamine. Although Sandlin now argues that he never acknowledged guilt for manufacturing a *specific* quantity of drugs, his plea serves as an admission that he manufactured a quantity of methamphetamine *sufficient* to trigger the mandatory minimum.

## B.   The Effect of *Apprendi*

Sandlin argues that he is entitled to relief under *Apprendi* based on his assertion that he did not plead guilty to any specific amount of methamphetamine. However, the factual record indicates that he indeed pleaded guilty to manufacturing in excess of fifty grams of methamphetamine. Effectively, his guilty plea operated as a waiver of any claim of relief under *Apprendi*. Accordingly, the district court correctly imposed the mandatory minimum sentence based upon evidence presented at the sentencing hearing.

In *Apprendi*, the Court held, as a matter of constitutional law, that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory minimum must be submitted to a jury and proved beyond a reasonable doubt." *Id.* at 488. Sandlin concedes that because he failed to raise his *Apprendi* claim in the district court he must show plain error. To show plain error under Federal Rule of Criminal Procedure 52(b), Sandlin must demonstrate "(1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997) (quoting *Olano*, 507 U.S. at 732).

government presented evidence to support the drug quantity specified in the count of conviction, this case is different from *Rettelle* in that the relevant conduct considered at the sentencing hearing was identical to that charged in the count of conviction.

The drug quantity was also corroborated by government testimony at the sentencing hearing. At the time of his arrest, Sandlin gave a description of the step-by-step process by which he made the methamphetamine to a drug task force agent. Sandlin also informed the agent that he made methamphetamine in three separate batches. This information was used by another government witness, chemist Walter Rodriguez, at the sentencing hearing. Based upon Sandlin's statement to the agent and Sandlin's "recipe," Rodriguez concluded that Sandlin's "recipe" would yield approximately sixty milligrams of pure methamphetamine each time it was used. Materials recovered from Sandlin's home corroborated the information given by Sandlin about his method of manufacturing. Rodriguez concluded that, assuming Sandlin used the same "recipe" three times with the same yield, Sandlin would have been able to produce approximately 82 grams of pure methamphetamine. Thus, by virtue of Sandlin's own words and the testimony of the government's expert chemist, the district court found that this amount exceeded the fifty gram requirement for the ten-year mandatory minimum sentence.

Sandlin further alleges that the district court sentencing was plain error because there was no proof that any single methamphetamine manufacturing process involved fifty grams or more. In the instant case, Sandlin was charged in a single count indictment and pleaded guilty to one violation of §841(a). While Sandlin produced the methamphetamine in three separate batches on the same day, his offense was considered to be one violation. In contrast, Sandlin contends that the government *may* charge a defendant separately for each batch of methamphetamine manufactured or attempted. In support of his argument, Sandlin cites *United States v. Anderson*, 987 F.2d 251 (5th Cir. 1993) and *United States v.*

defined by FED. R. CRIM. P. 52(b) before we may exercise our discretion to correct the error." *Id.* Therefore, in order for Sandlin to obtain relief, he must show that there was error, that the error was plain, and that it affected substantial rights. *United States v. Vincent*, 20 F.3d 229, 234 (6th Cir. 1994). Even if all of these factors exist, an appellate court has the discretion to abstain from intervention unless the error affected the fairness, integrity or public reputation of the proceeding. *Id.* (citing *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L. Ed. 2d 508 (1993)).

### III.  ANALYSIS

#### A.  Offenses and penalties

Sandlin contends that the district court erred in its determination of the mandatory minimum sentence regarding the quantity of drugs manufactured and the number of his acts involved in the drug manufacturing. The defendant now argues that he never acknowledged guilt for manufacturing any *specific* quantity of methamphetamine, and, therefore, without a specific quantity, the court could not impose the mandatory minimum sentence. Moreover, he argues that the lower court erred by combining his three acts of manufacturing into one violation in calculating the amount of drugs produced. His arguments lack merit on all issues.

To support his grounds for reversal of sentence, Sandlin cites *United States v. Winston*, 37 F.3d 235 (6th Cir. 1994) and *United States v. Rettelle*, 165 F.3d 489 (6th Cir. 1999), for the proposition that the mandatory minimum sentence applies only to a defendant who commits a violation involving more than the threshold amount of drugs. However, these cases are clearly distinguishable from the case now before us.

In *Winston*, the defendant was convicted, after a jury trial, of three separate counts: a count of conspiracy to possess in excess of fifty grams of crack cocaine; a count of possession of twenty-three grams of crack cocaine; and a count of possession of thirty seven grams of crack cocaine. Neither of

the possession counts involved a quantity of crack cocaine large enough to trigger the mandatory minimum as each count involved a separate violation of 21 U.S.C. § 841(a). In reaching this conclusion, we looked to the legislative history of the statute and determined that Congress' intent in using the term "a violation" in § 841(b)(1)(A) was to target major drug dealers and manufactures as opposed to small-time dealers and users. *Winston*, 37 F.3d at 240-41. "If we were to construe 12 U.S.C. § 841(b)(1)(A) as applying to aggregate amounts of drugs held on various separate occasions, it could be used against small-time dealers or users who never possess more than a few grams at a time." *Id.* at 241.

*Winston*, however, involved a possession conviction rather than a manufacturing conviction, and different considerations arise in the manufacturing context. Possession is a discrete act; one possesses drugs, in a specific quantity, at a particular point in time, and thus the discrete acts must be treated as separate violations. Manufacturing can involve discrete acts or it can be an ongoing process. While it is contrary to congressional intent to subject the small-time user, who often possesses small quantities of drugs, but never "major dealer" quantities, to the mandatory minimums intended for major dealers, manufacturing presents a different set of policy concerns. As in the present case, someone knowledgeable about such things can produce a relatively large quantity of methamphetamine over time, even though the batches of the drug produced may be quite small when considered individually. If the quantities produced in a more or less continuous cycle of manufacturing reach the level specified in the statute, it would not be contrary to congressional intent to subject that manufacturer to the mandatory minimum.

In *Rettelle,* we applied *Winston* in the manufacturing context. The defendant in *Rettelle* pleaded guilty to growing marijuana plants. The factual basis for the plea related only to ninety-three plants grown in 1993. *Rettelle,*165 F.3d at 490. At sentencing, however, the government offered evidence of a course of conduct, covering both 1992 and 1993, in which the defendant had grown, in the aggregate, more than 100

plants. *Id.* The district court concluded that, under the course of conduct evidence offered by the government, the defendant had grown more than 100 marijuana plants and thus sentenced her to the mandatory minimum for growing more than 100 plants. *Id.* We reversed, holding that the count of conviction only covered 1993 and that the record did not disclose evidence "that Rettelle cultivated marijuana on a continuous basis." *Id.* at 492. "Rather, Rettelle's 1992 and 1993 marijuana crops were the products of distinct growing seasons separated by several months in which Rettelle apparently did not grow any plants." *Id.*

In reaching this conclusion, we did not provide an "exact definition" of the term "a violation" in the manufacturing context but indicated that, in some cases, manufacturing will involve an ongoing or "continuing" process. Thus, if the *Rettelle* defendant had grown marijuana plants year-round for several years, she could have been sentenced for the aggregate number of plants over the whole period. But where the growing seasons, i.e., the acts of manufacturing, were distinct, they had to be treated as distinct violations of 21 U.S.C. § 841(b)(1)(A). In the present case, the record indicates that Sandlin manufactured the methamphetamine at issue in a relatively short period of time. Sandlin acknowledged having made more than one batch of methamphetamine on the day of his confession. J.A. at 24. On these facts, the district court did not commit plain error in aggregating the quantities of methamphetamine that Sandlin manufactured for sentencing purposes.

The instant case is further distinguishable from *Rettelle*. The *Rettelle* defendant pleaded guilty to growing marijuana plants and admitted to growing fewer than 100 plants. She was then sentenced to the mandatory minimum for growing more than 100 plants, based on relevant conduct separate from the count on conviction. In the present case, by contrast, Sandlin pleaded guilty to manufacturing in excess of 50 grams of methamphetamine. At his plea hearing, the district judge specifically warned Sandlin that his plea could expose him to the mandatory minimum. While it is true that the